

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Leonard, Speaker
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. O-3364
Re: Constitutionality of "Citrus
Advertising Law."

We have for reply your letter of April 1, 1941,
requesting the opinion of this department upon the constitutionality of a proposed citrus advertising act.

The proposed act reads as follows:

"An act to conserve and promote the prosperity and
welfare of the Texas Citrus Industry and of the State of
Texas by promoting the sale of citrus fruits produced in
Texas through the conducting of a publicity, advertising
and sales promotion campaign to increase the consumption
of such citrus fruits; to levy and impose an excise tax
on grapefruit and oranges produced in Texas and to provide
for the collection thereof; to create a citrus advertising
fund; to vest the administration of this Act in the Texas
Citrus Commission and to provide for the powers, duties
and authority of said Commission hereunder; and to provide
penalties for violations of this Act.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

Section 1. That economic waste is being fostered
in the citrus industry of the State of Texas by the lack
of proper advertising and dissemination of information
necessary for the development and promotion of the sale
of citrus fruits grown in the State of Texas; that such
unnecessary and unreasonable waste creates chaotic
economic conditions in the citrus industry of the State
of Texas of such severity as to imperil the ability of
producers of citrus fruits to contribute in appropriate

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Homer Leonard, page 2

amounts to the support of the ordinary governmental and
educational functions, thus tending to increase and
increasing the tax burdens of other citizens for the
same purposes; that in the interest of public welfare
and general prosperity of the State of Texas this avoid-
able and unnecessary loss can and should be eliminated
by acquainting the general public with the health giving
qualities of the food and/or dietetic value of Texas
citrus fruits.

"Section 2.   That because the citrus fruits grown
in Texas comprise the major agricultural crop of the
Rio Grande Valley section of the State of Texas, as
well as a major agricultural crop of the entire State
of Texas, and the business of expanding the markets
and increasing consumption of citrus fruits is of
public interest and because this Act is designed to
promote the general welfare of the Texas citrus industry,
which in turn will promote the general welfare of the
State of Texas, this Act is passed.

"Section 3.   That as used in this Act:

1.   The term "Commission" means the Texas Citrus
Commission.
2.   The term "person" means individual, partnership,
corporation, association and/or any other business unit.
3.   The term "grapefruit" means and includes only
the fruit Citrus Grandis, Osbeck, commonly called
grapefruit, grown in the State of Texas.
4.   The term "oranges" means and includes only the
fruit Citrus Sinensis, Osbeck, commonly called oranges,
grown in the State of Texas.
5.   "Shipment" of citrus fruits shall be deemed to
take place when the grapefruit and oranges are loaded,
within the State of Texas, in the car, boat, truck or
other conveyance in which the citrus fruits are to be
transported for sale or otherwise.
6.   The term "dealer" means and includes any person
engaged in the business of buying, receiving or selling
citrus fruits for profit or remuneration.
7.   The term "handler" means and includes any person
handling citrus fruits in the primary channel of trade.
8.   Citrus fruits shall be deemed to be delivered
into the primary channel of trade when any such citrus
fruits are sold, or delivered for shipment, or delivered
for canning and/or processing into by-products.
9.   The term "standard packed box" means 1-3/5 bushels
of citrus fruits whether in bulk or in containers.

704

"Section 4. That the administration of this Act shall be vested in the Texas Citrus Commission which shall prescribe suitable and reasonable rules and regulations for the enforcement of the provisions thereof, and shall administer the taxes levied and imposed by said Act. Said Commission shall have power to cause its duly authorized agent or representative to enter upon the premises of any handler of citrus fruits and to examine or cause to be examined by any such agent or representative any books, papers, records or memoranda bearing on the amount of taxes payable and to secure other information directly or indirectly concerned in the enforcement of this Act. Any person required to pay the taxes levied and imposed by this Act who shall by any practice or evasion make it difficult to enforce the provisions of this Act by inspection, or any person who shall after demand by the Commission, or any agent or representative designated by it for that purpose, refuse to allow full inspection of the premises or any part thereof or any books, records, documents or other instruments in any way relating to the liability of the taxpayer for the tax herein imposed or shall hinder or in any wise delay or prevent such inspection, shall be guilty of a misdemeanor and upon conviction shall be punished accordingly.

"Section 5. That the Commission shall plan and conduct a campaign for commodity advertising, publicity and sales promotion to increase the consumption of citrus fruits and may contract for any advertising, publicity, sales promotion, research and other necessary services in carrying out the purposes and intent of this Act. To accomplish such purposes the Commission shall have power and it shall be the duty of the Commission to gather, compile and disseminate information:

(a) Relating to Citrus Fruits and the importance thereof in preserving the public health, the economy thereof in the diet of the people and the importance thereof in the nutrition of children;
(b) Relating to the manner, method and means used and employed in the production and marketing of citrus fruits and laws of the State regulating and safeguarding such promotion and marketing;
(c) Relating to the added cost to the producer and dealer in producing and handling citrus fruits to meet the high standards imposed by the State that insure a pure and wholesome product;
(d) Relating to the effect upon the public health which would result from a break-down of the Texas citrus industry.

(e)  Relating to the reasons why producers of citrus fruits should receive a reasonable return on their labor and investment;

(f)  Relating to the problem of furnishing the consumer at all times with an abundant supply of fine quality citrus fruits at reasonable prices;

(g)  Relating to factors of instability peculiar to the citrus fruits industry in general and the grapefruit and/or orange industry in particular, such as unbalanced production, effect of the weather, influence of consumer purchasing power and price relative to the cost of other items of food in the normal diet of people, all to the end that an intelligent and increasing consumer demand may be created;

(h)  Relating to the possibilities with reference to increased consumption of citrus fruits;

(i)  Relating to such other, further and additional information as shall tend to promote more economical and broader  distribution and increased consumption of citrus fruits and as may foster a better understanding and more efficient cooperation between producers, dealers, handlers and the consuming public;

(j)  To decide upon some distinctive and suggestive trade name and to promote its use in all ways to advertise Texas citrus fruit.

"Section 6.  It is hereby made the duty of the Commission, annually and in any event not later than 30 days before the opening of any shipping season for citrus fruits, to carefully investigate, consider and determine the amount of funds, which, in the judgment of the Commission will be necessary and adequate for advertising purposes for the ensuing 12 month period and thereupon it shall be the duty of the Commission to determine, fix and impose an excise tax not exceeding 3¢ on each "Standard Packed Box" of grapefruit and of oranges grown and shipped and not exceeding Seventy cents (70¢) per ton of grapefruit and oranges canned or processed in the State of Texas, for the purpose of providing the necessary funds for advertising, provided the tax imposed on containers having capacity of one bushel of Citrus Fruits shall not exceed 2¢ per bushel container; and provided further that if any shipment or handling of Citrus fruits is made in containers of larger or smaller capacity than herein designated, same shall have imposed thereon an excise tax, for advertising purposes, in the ratio of the capacity of such containers to the "Standard Packed Box".

Honorable Homer Leonard, page 5

"Section 7.  That, in the event any handler or handlers shall purchase, acquire or handle grapefruit on a tonnage or weight basis rather than under the standard packed box basis, one ton shall be considered equal to or the equivalent of twenty-five standard packed boxes for tax purposes; and, in the event any handler or handlers shall purchase, acquire or handle oranges on a tonnage or weight basis rather than under the standard packed box basis, one ton shall be considered equal to or the equivalent of twenty standard packed boxes for tax purposes.

"Section 8.  That every handler shall keep a complete and accurate record of all grapefruit and/or oranges handled by him.  Such record shall be in such form and contain such other information as the Commission shall by rule or regulation prescribe.  Such records shall be preserved by such handlers for a period of one year and shall be offered for inspection at any time upon oral or written demand by the Commission or its duly authorized agents or representatives.

"Section 9.  That every handler shall, at such times as the Commission may by rule or regulation require, file with the Commission a return under oath on forms to be prescribed and furnished by the Commission, stating the number of standard packed boxes of grapefruit and/or oranges handled by such handler in the primary channel of trade during the period or periods of time prescribed by the Commission, provided that each handler of bulk quantities of grapefruit and oranges for canning and processing purposes shall file his verified certificate or return supported by proper weight tickets, showing the total weights in tons and pounds of such citrus fruits handled for the required period.  All such returns shall contain such further information as the Commission may require.

"Section 10.  That all taxes levied and imposed under and pursuant to the provisions of this Act shall be due and payable and shall be paid when the grapefruit and/or oranges covered by this Act are first handled in the primary channel of trade.  All such taxes shall be paid to the Commission by the person first handling the grapefruit and/or oranges covered by this Act in the primary channel of trade, except that all taxes on grapefruit and/or oranges delivered or sold for canning or processing shall be paid to the Commission by the person so canning or processing such grapefruit and/or oranges.  The payment of such taxes shall be evidenced

Honorable Homer Leonard, page 6

by stamps to be known and designated as "Grapefruit Adver-
tising Stamps" and "Orange Advertising Stamps" as the case
may be, with the amount paid for such stamps indicated
thereon, which stamps shall in every instance be affixed
to the grade certificate or certificates showing the grade
of the grapefruit and/or oranges covered thereby, when such
grapefruit and/or oranges are required by law to be inspected
for grade and certification thereof, and in all other cases
such stamps shall be affixed to the returns provided for
in Section 9 hereof. The Comptroller of the State of Texas
shall cause to be prepared and delivered to the Commission
suitable stamps denoting the taxes hereunder levied. The
Commission shall cause such stamps to be distributed for
payment of the taxes prescribed in this Act and shall pres-
cribe such method for the affixing and cancellation of said
stamps as shall be necessary to carry out and comply with
the intent and purpose of this Act.

"Section 11. That all taxes levied and collected under
the provisions of this Act shall be paid into the State
Treasury on or before the 15th day of each month. Such
moneys shall be kept in a special fund to be known as the
"Grapefruit Advertising Fund" and the "Orange Advertising
Fund" which are hereby created, and all moneys coming into
said special fund are hereby appropriated and made available
for defraying the expenses of the administration and enforce-
ment of this Act. All money levied and collected under this
Act over and above the necessary administrative expense as
provided for in this Act shall be spent exclusively for the
carrying out of the purposes and intent of this act as herein
provided. Provided further that all money collected under
this Act on taxes levied against grapefruit and/or oranges
that are canned or processed, over and above a fair prorata
proportion of the necessary administrative expenses as pre-
vided for in this Act, shall be spent exclusively for grape-
fruit and/or oranges so canned or processed. Provided fur-
ther that in cases where grapefruit and oranges are advertised
jointly each fund shall only bear its prorata share of such
joint advertising. All taxes levied hereunder and collected
through sale of said stamps by the Commission shall be paid
to the Comptroller of the State of Texas for payment into
said Grapefruit Advertising Fund, respectively.

Honorable Homer Leonard, page 7

"Section 12.  That all costs, expenses and obligations incurred under the provisions of this Act shall be paid out of the Grapefruit Advertising Fund and Orange Advertising Fund, respectively, upon warrant of the Comptroller when vouchers therefor are exhibited, approved by the Commission.

"Section 13.  That the provisions of this Act shall not apply to grapefruit and/or oranges consumed for domestic purposes on the premises where produced.

"Section 14.  That any handler who fails to file a return or to pay any tax within the time required by or pursuant to this Act shall thereby forfeit to the State a penalty of five per centum of the amount of tax determined to be due, as provided in this Act, plus one per centum of such amount for each month of delay or fraction thereof after the expiration of the first month after such return was required to be filed or such tax became due; but the Commission, if satisfied that the delay was excusable, may remit all or any part of such penalty.  Such penalty shall be paid to the Comptroller and disposed of as provided with respect to moneys derived from the taxes levied and imposed by this Act.

"Section 15.  That no common carrier, or other carrier, or person shall accept for shipment or ship or transport any grapefruit and/or oranges where stamps evidencing the payment of the taxes levied and imposed hereunder are not affixed to the grade certificate mentioned and referred to in Section 10 hereof.

"Section 16.  That the powers and duties of the Commission shall include the following:

"1.  To adopt and from time to time alter, rescind, modify and/or amend all proper and necessary rules, regulations and orders for the exercise of its powers and the performance of its duties under this Act.

"2.  To employ and at its pleasure discharge an advertising manager, agents, advertising agencies and such clerical and other help as it deems necessary and to outline their powers and duties and fix their compensation.

"3.  To make in the name of the Commission such advertising contracts and other agreements.

Honorable Homer Leonard, page 8

"4. To keep books, records and accounts of all its doings, which books, records and accounts shall be open to inspection and audit by the State Auditor at all times,

"5. To purchase or authorize the purchase of all office equipment and supplies and to incur all other reasonable and necessary expenses and obligations in connection with and required for the proper carrying out of the provisions of this act.

"6. To investigate and cause prosecution to be instituted for violations of the provisions of this Act.

"Section 17. That any person who shall violate or aid in the violation of any of the provisions of this act, upon conviction thereof shall be punished by a fine of not more than Five Hundred Dollars or imprisonment for a period not to exceed ninety days or by both such fine and imprisonment in the discretion of the Court, and all fines collected for violation of this act shall be paid into the Grapefruit Advertising Fund and/or the Orange Advertising Fund.

"Section 18. That this act shall be liberally construed, and if any part or portion thereof be declared invalid, or the application thereof to any person, circumstance or thing is declared invalid, the validity of the remainder of this act and/or the applicability thereof to any other person, circumstance or thing shall not be affected thereby, and it is the intention of the Legislature to preserve any and all parts of said act if possible.

"Section 19. That all laws or parts of laws in conflict herewith be and the same are hereby repealed.

"Section 20. That this Act shall take effect immediately upon its passage and approval by the Governor or upon its becoming a law without such approval, and shall remain in force and effect until September 1, 1943, after which date this Act shall be of no further force or effect."

Honorable Homer Leonard, page 9

Section 3 of Article VIII of our Texas Constitution provides:

"Taxes shall be levied and collected by general laws and for public purposes only."

Section 6 of Article XVI provides:

"No appropriation for private or individual purposes shall be made."

In our opinion No. O-3106, a copy of which is enclosed, this department had occasion to consider a very similar question. We were there passing upon the constitutionality of H. B. No. 136, levying an occupation tax on rice to finance an advertising and promotional campaign for that industry. We held H. B. 136 unconstitutional because it conflicted with Section 3 of Article VIII and Section 6 of Article XVI of the Constitution of Texas. The reasoning and authorities cited in Opinion No. O-3106 are peculiarly applicable here and for precisely the reasons there given it is our opinion that the proposed Citrus Advertising Act contravenes Section 3 of Article VIII and Section 6 of Article XVI of the Constitution of Texas.

Sections 1 and 2 of Article VIII of the Constitution of Texas provide:

"Section 1. Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. The Legislature may impose a poll tax. It may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this State. It may also tax incomes of both natural persons and corporations other than municipal, except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax; Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation, and provided further that the occupation tax levied by any county, city of town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business."

"Section 2.  All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation public property used for public purposes; actual places or (of) religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land; places of burial not held for private or corporate profit; all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools and property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character; also the endowment funds of such institutions of learning and religion not used with a view to profit; and when the same are invested in bonds or mortgages, or in land or other property which had been and shall hereafter be bought in by such institutions under foreclosure sales made to satisfy or protect such bonds or mortgages, that such exemption of such land and property shall continue only for two years after the purchase of the same at such sale by such institutions and no longer, and institutions of purely public charity; and all laws exempting property from taxation other than the property above mentioned shall be null and void."

Section 3 of Article VII of the Constitution of Texas provides:

"Section 3.  One-fourth of the revenue derived from the State occupation taxes and poll tax of one dollar on every inhabitant of the State, between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools; . . . ."

Honorable Homer Leonard, page 11


For the reasons set forth and under the authorities cited in opinion No. O-3106 you are further advised that the proposed Citrus Advertising Act levies an "occupation tax" upon those "first handling" citrus fruits. It is therefore our further opinion that the proposed Act departs from Section 3 of Article VII of the Texas Constitution in that one-fourth of the revenue to be derived thereunder is not set apart for the benefit of the public free schools.

We are enclosing a copy of our opinion No. O-3106 herewith.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED APR 17, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By

James D. Smullen
Assistant

JDS:AMM

ENCLOSURE

APPROVED OPINION COMMITTEE BY ___ CHAIRMAN